RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0024p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 18-4067

ADAM LIBBEY-TIPTON,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:16-cr-00236-1—Patricia A. Gaughan, District Judge.

Argued: October 15, 2019

Decided and Filed: January 23, 2020

Before: MERRITT, DAUGHTREY, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Vanessa F. Malone, FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Laura McMullen Ford, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Vanessa F. Malone, FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Laura McMullen Ford, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

MARTHA CRAIG DAUGHTREY, Circuit Judge. Defendant Adam Libbey-Tipton was indicted on three counts of accessing and possessing child pornography as a result of an FBI

investigation identifying him as a user of a child-pornography website.  The government sought to introduce evidence of Libbey-Tipton's prior conviction of child molestation as evidence of his propensity to access and possess child pornography.  The district court admitted the evidence under Federal Rules of Evidence 414 and 403.  Ultimately, the jury found Libbey-Tipton guilty on all three counts and the district court sentenced him to 235 months in prison, 27 months lower than the advisory Guidelines range.

On appeal, Libbey-Tipton challenges the admissibility of his prior conviction, the reasonableness of his sentence, and the effectiveness of trial counsel.  He also raises a Fourth Amendment challenge to the district court's denial of his motion to suppress the search warrant that led to his identification as a user of the website.  We conclude that the district court properly admitted the evidence in question and that the sentence imposed was not unreasonable.  Moreover, the record is not sufficiently developed to review the ineffective-assistance-of-counsel claim.  Finally, the challenge to the validity of the search warrant is precluded by our holding in *United States v. Moorehead*, 912 F.3d 963 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 270, (2019).  For these reasons, we affirm the district court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In late 2014, the FBI became aware of the website on the dark web called "Playpen," a forum dedicated to the advertisement and distribution of child pornography.  The FBI eventually gained control of the website and ran the site for 13 days, allowing it to track the registered users who were sharing, producing, and viewing child pornography on the site.  The account relevant in this case, "Revenger," was found to have registered on Playpen on November 6, 2014, and logged a total of 34 hours, 13 minutes, and 24 seconds between registration and the time the site was taken offline on March 4, 2015.  In that time, Revenger accessed 205 different postings that were labeled with clear descriptions of the contents, including "11 YO boys fucking," "underage selfies," "girls changing on beach," and a variety of posts within the "preteen videos girls hard core" section.  Once a user accessed a posting, the images that could be anticipated from the name of the posting appeared on the page as previews that were stored to a computer's cache automatically.  From there, a user could decide whether to download the larger images or video and save it to their computer.  Among the many postings and images accessed by Revenger was

a download of an image from a post within the "preteen videos girls hard core section" entitled "New Mary 2014," which notoriously depicted a prepubescent female being digitally penetrated by someone else's hand.

Pursuant to a warrant, the FBI used a variety of investigative technologies to trace the account of Revenger back to the defendant Adam Libbey-Tipton's IP address and computers' MAC addresses at his residence in Cleveland, Ohio.[1]  This information was sent to the FBI's Violent Crime Squad in Cleveland, Ohio, and they obtained a search warrant for Libbey-Tipton's home.  The search was executed with a focus on all digital devices in the home.  The forensics team performed on-site "previews" of all the discovered devices and seized all the devices that, upon preview, had indicia of child pornography on them.  Ultimately, all of the devices seized were from Libbey-Tipton's bedroom, the basement, the garage, and a storage device in the garage's ceiling.  The previews did not find any evidence of child pornography on the devices that belonged to the other residents of the house.

The forensic examinations of the seized devices uncovered 390 images depicting child pornography.  This number does not include images that were encrypted, because  Libbey-Tipton refused to provide his password, and forensic specialists were unable to decrypt some files.  Further, the MAC addresses of the seized devices—numbers that identify the individual hard drive within a computer—corresponded to the images viewed by the Revenger account, linking Libbey-Tipton to an additional 482 child-pornography images.

At the time of the search, Libbey-Tipton was residing with his then-girlfriend, his mother, his brother, and his brother's girlfriend, three of whom testified that they did not have access to Libbey-Tipton's bedroom computer because Libbey-Tipton usually kept his bedroom door locked.  Additionally, although Libbey-Tipton did not allow others to use his computer, he did use the computers of others in the house.

---

[1]Generally, when a person uses the internet, information is passed along to the website that identifies the user's Internet Protocol address (IP address).  Each modem has an IP address assigned to it, which is how internet providers connect users to the internet.  At any given time, only one person on the internet is using a particular IP address, making IP addresses traceable to a particular location.  Additionally, every physical connection to an internet network has a Media Access Control (MAC) address, which identifies the specific computer being used.  As a result, IP addresses can be tracked to a specific physical address or home, and MAC addresses can be tracked down to the specific computer at that physical address.

Based on the evidence obtained, a grand jury indicted Libbey-Tipton on three counts: (1) "knowingly receiv[ing] . . . by computer, numerous computer files, which . . . contained visual depictions of real minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2), in violation of Title 18, United States Code, Section 2252(a)(2)"; (2) "knowingly access[ing] with intent to view, numerous digital files containing depictions of real minors engaged in sexually explicit conduct . . . by any means including by computer, in violation of Title 18 United States Code, Section 2252(a)(4)(B)"; and (3) "knowingly possess[ing] a Dell computer [and five hard drives] . . . which contained visual depictions of real minors engaged in sexually explicit conduct . . . in violation of Title 18 United States Code, Section 2252(a)(4)(B)."

Prior to trial, the government submitted notice of intent to admit evidence of Libbey-Tipton's prior child-molestation conviction under Federal Rule of Evidence 414. Libbey-Tipton had been convicted of gross sexual imposition for an incident involving his minor cousin a little more than a year after he had first begun receiving child pornography electronically. Libbey-Tipton's cousin, who was four-years-old at the time of the assault, was at her grandparents' house with her older sister. She was in Libbey-Tipton's room, jumping on his bed with her sister while Libbey-Tipton played video games. Libbey-Tipton approached her on the bed and pulled up her clothes and touched her vagina with his finger. Defense counsel filed a motion *in limine* to exclude mention of the prior child-molestation conviction. Ultimately, however, the district court found the evidence admissible under Federal Rules of Evidence 414 and 403.

At trial, the government's case relied on the testimony of FBI special agents, a special investigator with the county prosecutor's office who was commander of the Ohio Internet Crimes Against Children Task Force, and a computer forensic specialist at the Ohio Bureau of Criminal Investigation. Those witnesses detailed how Libbey-Tipton's identity was discovered and how he—and his computers—were connected to Revenger. The government also called Nichole Morabito, the girlfriend of Libbey-Tipton's brother, and Ashlie Mason, Libbey-Tipton's ex-girlfriend, as witnesses. Morabito testified that she contacted the National Center of Missing and Exploited Children CyberTipline after developing concerns about Libbey-Tipton because of conversations with friends and family. She testified that she had seen Libbey-Tipton looking at

images of nude girls and that, on more than one occasion, he had asked her to look at the images on his bedroom computer, while asking her what age she thought the girls were. Morabito estimated the girls were between the ages of 13 and 15. Mason, defendant's girlfriend at the time of the search, described Libbey-Tipton as mostly keeping his bedroom door locked and said that at least once a day he would be in his room with the door locked, keeping her out even though they otherwise shared the room together.

Additionally, Libbey-Tipton's cousin testified via video conference regarding Libbey-Tipton's molestation of her when she was four years old. In the middle of her testimony, Libbey-Tipton's counsel objected to the evidence and offered to stipulate to the prior conviction, but the government was unwilling to accept the stipulation. Defense counsel's request for a special jury instruction failed when he could not specify what type of instruction he was requesting.

The defense called only two witnesses at trial, relying on challenges to the proof laid out by the government and by showing that others had access to Libbey-Tipton's computers.

Ultimately, the jury found Libbey-Tipton guilty on all three counts of the indictment, although count three was dismissed later upon motion by the government. The district court sentenced Libbey-Tipton to 235 months in prison on each of the two remaining counts, to run concurrently, resulting in a sentence below the advisory Guidelines range.

## DISCUSSION

**Challenge Under Federal Rules of Evidence 414 and 403**

Libbey-Tipton asserts that the district court abused its discretion when it permitted testimony regarding his prior conviction of gross sexual imposition of a minor. He contends that Federal Rule of Evidence 414 calls for a more stringent analysis when the prior offense is sexual abuse of a child and the current offense is possession and receipt of child pornography. Further, he argues that Federal Rule of Evidence 403 prevents admission in this case, because any probative value his prior conviction might have had was substantially outweighed by the danger of unfair prejudice presented by the stigma of child sexual abuse.

We review evidentiary decisions under an-abuse-of-discretion standard. *United States v. Underwood*, 859 F.3d 386, 389 (6th Cir. 2017) (citing *United States v. Henderson*, 626 F.3d 326, 333 (6th Cir. 2010)). In the case of a Rule 403 analysis, we grant the district court "very broad" discretion in making its determinations. *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006) (citing *United States v. Vance*, 871 F.2d 572, 576 (6th Cir. 1989)). Under this standard, "this court takes a maximal view of the probative effect of the evidence and a minimal view of its unfairly prejudicial effect, and will hold that the district court erred only if the latter outweighs the former." *United States v. Sassanelli*, 118 F.3d 495, 498 (6th Cir. 1997) (citing *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996)).

In ruling on the government's notice of intent to produce evidence of Libbey-Tipton's child-molestation conviction under Rule 414 and the defense's motion *in limine* to exclude it, the district court determined that although some prejudice would be caused by the admission of the prior conviction, the probative value of the evidence would not be "*substantially* outweighed by the danger of *unfair* prejudice." The district court further reasoned that in adopting Rule 414, Congress—"by design"—distinguished prior instances of child molestation from other bad acts. The court noted that the prior act and offense in question were similar enough to be considered "of the same type," and that the prior conviction was "highly relevant to whether the defendant— as opposed to another individual—committed the charged crimes."

Federal Rule of Evidence 414(a) provides: "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed *any other* child molestation. The evidence may be considered on any matter to which it is relevant." (Emphasis added.) As defined, Rule 414's reference to "child molestation" broadly includes the receipt of child pornography. "Child molestation" is defined by Rule 414(d)(2)(B) to mean any crime under federal or state law involving "any conduct prohibited by 18 U.S.C. chapter 110," which embraces the knowing receipt, by computer, of "any visual depiction" involving "a minor engaging in sexually explicit conduct." 18 U.S.C. § 2252(a)(2); *see also United States v. Seymour*, 468 F.3d 378, 385 (6th Cir. 2006). Thus, Rule 414 "create[d] an exception to the general ban on propensity evidence contained in Rule 404(b)." *Underwood*, 859 F.3d at 393 (quoting *Seymour*, 468 F.3d at 384–85).

Relevant evidence of a defendant's prior child molestation is admissible under Rule 414 unless "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. In considering the probative value of evidence, courts may consider the closeness in time between the acts, the similarity between the act in question and the prior act, and the necessity of the evidence to the government's case, including whether there were less invasive means of obtaining the information. *See, e.g.*, *Underwood*, 859 F.3d at 393. When evaluating the probative value of evidence, the court should analyze it separately from the government's need for the evidence. *United States v. Stout*, 509 F.3d 796, 800 (6th Cir. 2007) ("[T]he need for the evidence does not make the evidence more likely to prove that which it is offered to prove. Probative value and need for the evidence are separate considerations that weigh in favor of admission under the Rule 403 balancing test.").

Libbey-Tipton's main argument attacks the evidence's probative value, claiming that "a propensity to sexually abuse a child does not directly translate to a propensity to possess and receive child pornography." That argument, however, relies almost exclusively on an unpublished opinion that has no precedential value and is also distinguishable from this case in two ways. *United States v. Hough*, 385 F. App'x 535 (6th Cir. 2010).

First, although the court in *Hough* stated that "[a] propensity to sexually abuse a child does not directly translate to a propensity to download child pornography," 385 F. App'x at 537, it relied on *United States v. Hall*, a case noting that the Sixth Circuit has held that "prior molestations create the logical inference that the defendant 'has a sexual interest in children that is strong enough to cause him to break the law.'" *Hough*, 385 F. App'x at 536 (quoting *United States v. Hall*, 202 F.3d 270, 2000 WL 32010, at *4 (6th Cir. 2000) (table decision). The court in *Hough* elaborated:

> To some degree, evidence of Hough's molestations of the four girls makes it more likely he would download child pornography. In addition, it is a logical inference that Hough's preferences for incest, sodomy, oral sex, and prepubescent girls would translate from his actions in the molestations to the images and searches for child pornography, indicating it was Hough who downloaded the images.

*Hough*, 385 F. App'x. at 537.

It is notable that the language of Rule 414 reads "the court may admit evidence that the defendant committed *any other* child molestation," implying that the prior acts do not need to be identical to be admitted. Fed. R. Evid. 414(a) (emphasis added). In this case, moreover, the physical act and the subject matter of the child pornography are strikingly similar. For example, Libbey-Tipton's prior act involved the use of his fingers to touch a prepubescent girl's vagina up through the leg of her pants. Similarly, the government's record of Libbey-Tipton's Playpen activity includes his access to a post containing a video depicting an adult male touching the vagina of a prepubescent girl with his finger and to a post named "Nude public upskirts" containing images of prepubescent girls' vaginas exposed to the public. It is logical to infer that Libbey-Tipton's preference for pornography depicting prepubescent girls would translate from his actions in the molestation of his four-year-old cousin and serve as relevant evidence of whether it was Libbey-Tipton that downloaded the images. This connection aligns with the court's reasoning in admitting prior-act evidence to show intent and knowledge in *Hall*:

> Hall's prior conviction and his nude photographs were relevant because they show that Hall intentionally pursued a sexual interest in children, thereby demonstrating his intent to knowingly receive child pornography. Hall's prior conviction for the sodomy and sexual abuse of a young boy also creates the logical inference that he has a sexual interest in children that is strong enough to cause him to break the law. Such a person is more likely to be interested in and to knowingly receive child pornography, rather than to receive the images accidently without the requisite knowledge or intent.

2000 WL 32010, at *3. Because Rule 414 allows for admission of propensity evidence, the use of Libbey-Tipton's prior act to show his motivation and intention in viewing such images is relevant and logical.

*Hough* also can be distinguished from this case because in *Hough*, the allegations of past child molestation sought to be introduced were unproven. *Hough*, 385 F. App'x at 537–38.

As such, the court found that the introduction of those prior acts could shift the focus of the jurors from the current charges and could turn into a series of distracting mini-trials. *Id.* As the government points out, Libbey-Tipton, conversely, was convicted by a jury of child molestation, and thus the occurrence of the prior act is not in question.

There are additional factors the court should consider when evaluating whether the prior-act evidence was probative. In considering proximity in time, Libbey-Tipton's molestation of his four-year-old cousin occurred in July 2005, and count one of the superseding indictment indicates that Libbey-Tipton began knowingly receiving child pornography on or about October 26, 2006. Although we have acknowledged that the passage of time could raise issues of reliability, the government contends that "it is reasonable to assume that a victim of child abuse is not likely to forget such a traumatic event," quoting *United States v. Gabe*, 237 F.3d 954, 960 (8th Cir. 2001). In *Underwood*, we referenced *Gabe* to uphold the admission of uncharged prior acts of molestation that were 20 years old. 859 F.3d at 393 (citing *Gabe*, 237 F.3d at 959–60). We further noted that at the time the Violent Crime Control and Law Enforcement Act—which promoted Rule 414—was proposed, the House sponsor made clear that the absence of a time limit was intentional. *Id.* (quoting 140 Cong. Rec. H8968—01, H8991 (daily ed. Aug. 21, 1994)) ("No time limit is imposed on the uncharged offense for which evidence may be admitted."). Given that we have admitted an uncharged act of molestation more than 20 years old, the 15-month lapse in time in this case cannot be considered grounds for reversal of the conviction.

In evaluating the probative value of prior acts, courts also consider the necessity of the evidence to the government's case. *See Stout*, 509 F.3d at 800. In that analysis, the government's need for the evidence to prove a certain element of a crime should be balanced against alternative means of proving the element. *Id.* In *Stout*, because there was an alternate means of proof available—the defendant's ex-wife's testimony that she had seen internet history files on Stout's computer indicating he had watched child pornography—the district court decided not to admit the prior acts of the defendant, which were considered particularly inflammatory. *Id.* at 800–01.

In this case, both parties agree the government had anticipated that Libbey-Tipton would argue that the pornography was not his, because there were others living in the house and the computers had been purchased used.  As a result, the government believed that the prior-act evidence was necessary to show propensity in order to rebut that defense.  The government relies on the parallel facts in *United States v. Jones*, an unpublished Sixth Circuit case, which held that a defendant's "prior conviction for sexual misconduct with a minor was probative of his sexual interest in children and helped rebut his defense that his neighbors had downloaded child pornography to his computer without his knowledge."  *United States v. Jones*, 747 F. App'x 348, 357 (6th Cir. 2018).  Indeed, in this case the defense insists that "[t]here was never concrete evidence indicating that Libbey-Tipton was 'Revenger,' or that he set up the member profile on Playpen."  But in contending that there was no more in the record than mere "speculation" that he was actually Revenger, Libbey-Tipton also makes the government's case for the introduction of the relevant prior conviction based on an act that would clearly be of interest to Revenger.

Libbey-Tipton also contends that the victim of his prior criminal conviction need not have been called to testify because he offered to stipulate to the fact of the conviction.  In evaluating the government's necessity for offering the evidence of the prior crime, we should consider the alternate means available as proof for the same issue, such as a stipulation.  *Stout*, 509 F.3d at 800.  But, Libbey-Tipton's offer to stipulate was not made until the victim-witness was on the stand (via video) and the direct examination was underway, at which point the issue had already been briefed and the district judge had determined that the evidence was admissible under Rule 414.

Moreover, the government is not required to accept a stipulation in place of evidence that would establish its "human significance" with the jury.  *United States v. Luck*, 852 F.3d 615, 626 (6th Cir. 2017).  In *Luck*, we declined to extend the ruling in *Old Chief v. United States*, 519 U.S. 172 (1997), and instead allowed the government to use images over a defendant's proffered stipulation because

> child pornography cases are especially susceptible to a wide range of strong emotional responses, including disbelief that a defendant would commit the act in question.  Showing the actual images paints a portrait far more vivid than a sanitized stipulation, thereby establishing for the jury "its human significance,"

and in the process "implicating the law's moral underpinnings and a juror's obligation to sit in judgment."

*Id.* at 626 (quoting *Old Chief*, 519 U.S. at 187).

Of course, Rule 414 must be read in conjunction with Rule 403. Once a court determines that the evidence has probative value, it must find that the value is not substantially outweighed by a danger of *unfair* prejudice. Inflammatory details that have little probative value would be considered unfairly prejudicial—as opposed to simply prejudicial. *United States v. Sims*, 708 F.3d 832, 835–36 (6th Cir. 2013) (citing *United States v. Bilderbeck*, 163 F.3d 971, 978 (6th Cir. 1999) (noting that "unfair prejudice [ ] mean[s] the undue tendency to suggest a decision based on improper considerations")). Details have been considered inflammatory enough to be unfairly prejudicial when the prior acts were "more lurid and [ ] more interesting than the evidence surrounding the actual charges." *Stout*, 509 F.3d at 801.

In *Stout*, for example, we upheld a district court's decision to suppress evidence of a prior sexual act due to the unfair prejudice it would impose on the defendant. *Id.* In applying the balancing test, we concluded that the prior acts of the defendant—videotaping his 14-year-old daughter in the shower and sexually abusing his six-year-old stepdaughter—would "be more alarm[ing] and disgust[ing] [to the jury] . . . than the actual charged conduct." *Id.*

As Libbey-Tipton concedes in his brief, "[e]vidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403." *Sanders*, 95 F.3d at 453 (citing *United States v. Mullins*, 22 F.3d 1365, 1373 (6th Cir. 1994)). But his brief presents no argument as to why the evidence in question would unfairly prejudice him, other than the stigma associated with child molestation. Moreover, it was within the district judge's discretion to determine that the prejudice was not *unfair*.

Because Libbey-Tipton contended that the government could not prove that the images belonged to him, the evidence of his prior act could be considered necessary to show propensity and motive. Furthermore, the prior act was sufficiently similar to the child-pornography offense, was within the time proximity allowed by this court, and was relevant and necessary to the government's case. Taking the "maximal view of the probative effect of the evidence and a

minimal view of its unfairly prejudicial effect," *Sassanelli*, 118 F.3d at 498 (citation omitted), and granting the district court "very broad" discretion, *Newsom*, 452 F.3d at 603 (citation omitted), we decline to hold that the district court's decision to allow the admission of the prior act under Rules 414 and 403 constituted an abuse of discretion.

**Challenge to the Reasonableness of Libbey-Tipton's Sentence**

Libbey-Tipton challenges the reasonableness of his sentence on several grounds. First, he contends that the district court incorrectly calculated the number of pornographic images he viewed, possessed, or accessed. Second, he argues that the length of his sentence is unreasonable due to the district court's failure to consider his mental health issues and policy concerns regarding the application of the enhancements listed in § 2G2.2 of the United States Sentencing Guidelines.

Relying on U.S.S.G. § 2G2.2, the district court concluded that Libbey-Tipton had a base offense level of 22, with an 18-level increase based on enhancements including: two levels for material that included a prepubescent minor; four levels for material that included "sadistic or masochistic conduct or other depictions of violence"; five levels for a pattern of conduct that involved the sexual abuse of minors; two levels for the use of a computer; and five levels for the offense involving over 600 images. A two-level reduction was applied because Libbey-Tipton did not intend to traffic or distribute the material, resulting in an advisory Guidelines range of 262 to 327 months. The district court ultimately sentenced Libbey-Tipton to two concurrent 235-month sentences. Even so, Libbey-Tipton argues that he should have been sentenced as a level-33 offender, with a sentencing range of 151–188 months.

In reviewing the reasonableness of a sentence, we apply an abuse-of-discretion standard of review. *Gall v. United States*, 552 U.S. 38, 51 (2007). "Review for reasonableness has both procedural and substantive components." *United States v. Sexton*, 512 F.3d 326, 331 (6th Cir. 2008) (citing *Gall*, 552 U.S. at 50; *United States v. Borho*, 485 F.3d 904, 908 (6th Cir. 2007)). If, on review, the appellate court finds "that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*, 552 U.S. at 50. An appellate

court may—but is not required to—presume that a sentence is substantively reasonable if it falls within the applicable Guidelines range. *Rita v. United States*, 551 U.S. 338, 354–55 (2007). The same presumption "naturally extends to sentences below the Guidelines range." *United States v. Pirosko*, 787 F.3d 358, 374 (6th Cir. 2015) (citation omitted).

When evaluating whether a challenge is procedural or substantive, we look "beyond the label [appellant] assigns to his argument." *United States v. Parrish*, 915 F.3d 1043, 1048 (6th Cir. 2019). Libbey-Tipton argues that his sentencing claim should be evaluated using only a substantive-reasonableness analysis. The Government correctly points out, however, that at least one aspect of Libbey-Tipton's argument should be considered a procedural-reasonableness challenge.

The analysis for a procedural-reasonableness claim "is a process-driven one." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 264 (2018). It requires us to evaluate whether the court properly calculated the Guidelines range, treated the range as advisory and not mandatory, considered the sentencing factors in 18 U.S.C. § 3553(a) while excluding impermissible factors, determined the sentence "based on facts that are not clearly erroneous," and explained the reasoning behind the sentence. *Id.* When a defendant contends that there is insufficient evidence to support a district court's finding used, we treat it as a contention "that the district court made an erroneous factual finding" in sentencing and, as such, the claim triggers an analysis under procedural reasonableness. *Parrish*, 915 F.3d at 1047.

In calculating a sentence for possession of child pornography, a district court first must look to the provisions of U.S.S.G. § 2G2.2. The guidelines call for an increase of five levels if an offense involves 600 or more images. U.S.S.G. § 2G2.2(b)(7)(D). In sentencing Libbey-Tipton, the district court found that Libbey-Tipton's conduct involved 872 images of child pornography, calculated by adding the 390 images of pornography found on Libbey-Tipton's hard drives to the 482 images the FBI found to be accessed by him online under the username Revenger.

Libbey-Tipton argues, however, that "many of the purported images were located in unallocated space, or were accessed by viewing the Playpen website and not downloaded or

retained" on any of his devices.  Citing an unpublished Sixth Circuit case and a published case from the Tenth Circuit, Libbey-Tipton contends that the images found in unallocated space "may be insufficient" to support the five-level enhancement because the enhancement "requires proof the images were knowingly possessed by or accessed with intent to view," citing *United States v. Keefer*, 490 F. App'x 797, 799-800 (6th Cir. 2012), and *United States v. Dobbs*, 629 F.3d 1199, 1204 (10th Cir. 2011)).  In *Keefer*, the court held that the "mere presence of 1,215 images in [ ] 'unallocated space' [ ] was insufficient relevant conduct to justify the enhancement because the [government's] sole explanation of the unallocated space was an 'unverified, unexplained website definition' that 'images are stored in unallocated space if they were present on a computer at some point' . . . [and] [p]resence does not equate to knowing possession." *Keefer*, 490 F. App'x at 799.

Importantly, however, the court also noted that "[b]oth 18 U.S.C. §§ 2252(a)(4) and 2252A(a)(5) were amended in 2008 to criminalize the knowing access of child pornography with the intent to view it in addition to knowing possession." *Id.* at n.1 (citing Effective Child Pornography Prosecution Act of 2007, Pub. L. No. 110–358, § 203, 122 Stat. 4001 (2008)).  Because the district court found Libbey-Tipton guilty of violating the provisions of 18 § 2252(a)(4)(B) after the effective date of the 2008 amendments, *Keefer* provides him no avenue for relief.  Likewise, Libbey-Tipton's reliance on *Dobbs* is misplaced.  *Dobbs* involved a challenge to the sufficiency of the convicting evidence when only two pornographic images were in question, and both were cache files. 629 F.3d at 1208.  Here, however, the ruling in *Dobbs* is not relevant because Libbey-Tipton did not challenge the sufficiency of evidence at trial, and the evidentiary standard applicable at sentencing is different from that at a hearing to determine guilt or innocence. *Sexton*, 512 F.3d at 330 ("Where, as here, a district court understands that the Guidelines are only advisory, judicial fact-finding done by the preponderance of the evidence is permissible.").

Even so, Libbey-Tipton argues that "the government presented no evidence at sentencing to prove" the files had belonged to or had been accessed by him.  The presentence report, however, outlines the process used to connect Libbey-Tipton to the Revenger account, tracking the IP address for the user, then—pursuant to a search warrant based on that IP address—finding

390 child-pornography images on Libbey-Tipton's hard drives.  Even without the unallocated files on the hard-drive, the FBI's account of Libbey-Tipton's actions on Playpen provided sufficient evidence to qualify for the five-level sentencing enhancement.  As a result, the district court cannot be said to have committed plain error in relying upon the government's calculation of the number of pornographic images in Libbey-Tipton's possession.

A substantive-reasonableness analysis focuses on the length of the sentence.  *United States v. Clayton*, 937 F.3d 630, 643 (6th Cir. 2019).  On appeal, we consider whether a sentence is reasonable by questioning whether the district court appropriately balanced the factors laid out in 18 U.S.C. § 3553(a).  *Id.* (citing *Rayyan*, 885 F.3d at 442).  These factors include "the nature and circumstances of [defendant's] conduct, [defendant's] history and characteristics, the need for the sentence, sentencing disparities, and the need for restitution."  *Pirosko*, 787 F.3d at 374–75.  When a defendant raises a specific argument in pursuit of a lower sentence, the district court must demonstrate that it considered the argument, *Parrish*, 915 F.3d at 1049 (citations omitted), but "a district court need not provide an explanation for rejecting a mitigating argument if 'the matter is conceptually simple' and 'the record makes clear that the sentencing judge considered the evidence and arguments.'"  *Sexton*, 512 F.3d at 332 (quoting *Rita*, 551 U.S. at 339–40) (additional citation omitted).

Libbey-Tipton contends that the district court did not give proper weight to the argument that courts have rejected the child-pornography guidelines because of their harshness and the fact that the computer enhancement could be applied in almost all cases.  In support of his position, Libbey-Tipton cites *United States v. Marshall* to emphasize that other courts have rejected the child-pornography guidelines and varied downward due to the severe sentences called for under the Guidelines.  870 F. Supp. 2d 489, 493 (N.D. Ohio 2012), *aff'd,* 736 F.3d 492 (6th Cir. 2013).  We have considered the same argument in other child-pornography cases but determined it to be "unavailing."  *See Pirosko*, 787 F.3d at 375 (citing *United States v. Bistline*, 665 F.3d 758, 762–764 (6th Cir. 2012) (holding that a district court's disagreement with §2G2.2 on policy grounds was not sufficient to justify the downward variance granted); *see also United States v. Cunningham*, 669 F.3d 723, 733 (6th Cir. 2012) (rejecting the argument that § 2G2.2 is "unfit for deference" because of its "purported lack of empirical grounding")).

Nor does Libbey-Tipton's argument regarding the prevalence of computer use in child-pornography crimes entitle him to relief. Libbey-Tipton points out that, as of 2017, 95.7% of child-pornography offenses involve the use of a computer, and as such, the enhancement for use of a computer in the crime under U.S.S.G. § 2G2.2(b)(6) fails to distinguish between defendants who are more of a threat to the community or more culpable than other offenders, citing United States Sentencing Commission, *Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2017*, at 45, and *Marshall*, 870 F. Supp. 2d at 494. But we have also rejected this argument, explaining the purpose of the computer-use enhancement and, thus, denying that the increase is unnecessary or redundant:

> [B]ecause Lewis could have violated the statute without using a computer, we cannot say that computer use is an element of the crime. The fact that he did use a computer, then, may serve as an offense characteristic affecting the determination of his sentence, and which may result in an additional sentence enhancement. This position is bolstered by the fact that the U.S.S.G. § 2G2.2(b)(6) enhancement for using a computer aims at punishing a distinct harm beyond the mere transmission of child pornography. Specifically, "[d]istributing child pornography through computers is particularly harmful because it can reach an almost limitless audience. Because of its wide dissemination and instantaneous transmission, computer-assisted trafficking is also more difficult for law enforcement officials to investigate and prosecute." As such, we cannot accept Lewis's position that enhancing his sentence for his use of a computer is double-counting when the enhancement is designed to address a distinct harm.

*United States v. Lewis*, 605 F.3d 395, 403 (6th Cir. 2010) (citing *United States v. Lebovitz*, 401 F.3d 1263, 1271 (11th Cir. 2005) (quoting H.R.Rep. No. 104–90, at 3–4 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 759, 760–61)).

Nonetheless, the district court did entertain Libbey-Tipton's arguments. At the sentencing hearing, the district court noted that it has "historically given a downward variance in cases of this nature" because the advisory range in child-pornography cases "appear[s] to be more severe when compared to crimes that are equally serious." The district court then went through a variety of the 18 U.S.C. § 3553(a) factors it considered, including the defendant's family background and mental health history, and any expression of remorse. Ultimately, however, the district court determined that because of the defendant's lack of remorse, his "very sophisticated

effort to hide the conduct," and his previous conduct "act[ing] on his desires with a child," it "[could] not justify the normal variance that [it had] done historically in cases of this nature." Even so, the district court still granted a one-level downward variance due to consideration of factors Libbey-Tipton specified in his brief, including the familial abuse he had endured in his life and his acknowledged suicide attempts.  Although the district court did not refer to the use of computers specifically, the court made clear at three separate points that it had considered the policy issues with the Guidelines range, which is why it opted for a downward variance.  As a result, the record before us "makes clear that the sentencing judge considered the evidence and arguments." *Sexton*, 512 F.3d at 332.

The district court in this case clearly laid out its justification for the below-Guidelines sentence, considered the matters that both parties raised, and did not give unreasonable weight to any factor in particular.  Weighing the various appropriate factors "is a matter of reasoned discretion, not math, and our highly deferential review of a district court's sentencing decisions reflects as much." *Rayyan*, 885 F.3d at 442 (citing *Gall*, 552 U.S. at 51).  We conclude that the district court did not abuse its discretion in refusing a greater downward variance.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court.