NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0592n.06

No. 24-3716

| | | |
|---|---|---|
| **UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT** | | **FILED**<br>Dec 19, 2025<br>KELLY L. STEPHENS, Clerk |

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

RICHARD EBY,

      Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before: WHITE, STRANCH, and MURPHY, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Richard Eby appeals his criminal conviction stemming from his participation in an online chatroom that exploited underage girls. Eby challenges his conviction, arguing that the district court erred in three ways: by permitting the Government to present expert testimony at trial; by improperly responding to a jury question; and by admitting evidence of other acts of child sexual exploitation by Eby. For the following reasons, we **AFFIRM**.

## I. FACTUAL BACKGROUND

On March 12, 2020, a grand jury in the Northern District of Ohio charged Richard Eby with conspiracy to engage in sexual exploitation of children, in violation of 18 U.S.C. §§ 2251(a) and (e) (count 1); sexual exploitation of children, in violation of 18 U.S.C. §§ 2251(a) and (2) (count 2); conspiracy to receive visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1) (count 3); and conspiracy to access with intent to view child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2) (count 4). The

charges originated from Eby's participation in a group that lured underage girls to a chatroom-based website and coerced them into engaging in sexual acts on camera.

In 2015, Adam Christensen, an FBI special agent who was trained in forensic tools and analysis of computers, began investigating a group of individuals on chateen.com ("Chateen"), a social media platform that allows webcam-based chatting between two persons. Members of the group would collectively recruit girls from other social media websites to virtual chatrooms on Chateen and would then encourage them to engage in sexual activity on camera. Christensen assumed the identity of an individual within Chateen who was cooperating with authorities, and over the course of approximately three weeks, he collected the IP addresses and usernames of numerous Chateen members. One such IP address, connected with the username "perp6969," belonged to Eby.

Law enforcement ultimately seized Eby's laptop and other electronic devices, and Christensen conducted a forensic analysis of the laptop using two different software programs, Internet Evidence Finder ("IEF") and Axiom. The programs identified "artifacts" on the laptop, such as files or browser history, that might be of interest. Christensen then reviewed the artifacts and "tagged" certain ones that he believed were particularly relevant to the investigation, which would allow investigators to quickly find relevant material in the report. In total, he tagged approximately 17,703 artifacts.

Christensen then created a portable case file that contained the IEF and Axiom reports and the tagged artifacts—minus any contraband, which could only be viewed at the FBI field office. Over a four-day period approximately eleven months before trial, the Government permitted Eby's defense expert, Matthew Curtin, to inspect the images, videos, and other extractions from Eby's electronic devices, as well as the portable case file and related reports, at an FBI field office.

On January 11, 2024, the Government provided Eby with a notice of expert testimony, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), that identified Christensen's qualifications and experience as well as twelve areas in which he was expected to testify. In the notice, the Government maintained that it believed that Christensen's possible testimony "likely do[es] not qualify as expert or opinion testimony" but was providing notice out of "an abundance of caution." R. 87-1, Rule 16 Notice, PageID 1413. The notice also stated that Eby has "had access to Agent Christensen's reports and [has] also been privy to his opinions about the operation of the chatrooms on Chateen." *Id.* Eby, however, claims that he did not have access to this information.

At trial, which began on January 22, 2024, Agent Christensen testified to his forensic analysis of Eby's laptop and the images of child sexual abuse materials found there. This evidence was introduced through Exhibits 62 and 63, which contained exported information from the Axiom portable case file and displayed a selected number of artifacts—8 tags in Exhibit 62 and 78 tags in Exhibit 63. The district court permitted the introduction of these exhibits over defense counsel's objection that the exhibits were "reports generated by an expert that weren't [properly] turned over" and despite the Government's late disclosure of these exhibits.

During jury deliberation, the district court received a question from the jury, asking whether "any of the images or videos found on Eby's computer [were] of the minor victims?" R. 81, Trial Tr., PageID 1294. After conferring with the parties, and entertaining the objections of counsel, the court instructed the jurors that "there was no evidence on Eby's computer, Exhibits 44 and 51, . . . that the images were or were not the minor victims." R. 81, PageID 1295.

On January 26, 2024, the jury convicted Eby of conspiracy to engage in sexual exploitation of children, conspiracy to receive visual depictions of minors engaged in sexually explicit conduct,

and conspiracy to access with intent to view child pornography (Counts 1, 3, and 4). It found him not guilty of sexual exploitation of children (Count 2). Eby was sentenced to a total of 390 months' imprisonment to be followed by a supervised release term of ten years.

Eby filed a motion for a new trial claiming substantial legal errors, including that the government's notice of expert testimony was deficient; admission of Exhibits 62 and 63 was erroneous; and the district court's response to the jury's question was improper and should have instructed the jury to rely on its collective recollection. The district court conducted an evidentiary hearing at which both Christensen and Curtin testified. It concluded that the Government's notice was proper and that the Government did not otherwise offer improper expert testimony and exhibits. Regarding its response to the jury's question, the district court found that it had not mislead the jury or usurped its fact-finding role. This appeal followed.

## II.   LEGAL ANALYSIS

### A.   Expert Testimony Issues

Eby contends that the district court erred in admitting the testimony of Agent Christensen because the Government did not properly notice his expert testimony under Federal Rule of Criminal Procedure 16 and did not timely disclose his expert reports or trial exhibits.

#### 1.   Standard of Review

We review for abuse of discretion a court's decision to admit or exclude evidence as well as its rulings on issues raised under Federal Rule of Criminal Procedure 16(a)(1)(G). *United States v. Ganier*, 468 F.3d 920, 925 (6th Cir. 2006); *United States v. White*, 492 F.3d 380, 398 (6th Cir. 2007). We reverse a court's erroneous evidentiary decision only if the defendant can show that it caused substantial prejudice or affected a substantial right. *United States v. Collins*, 799 F.3d 554,

570 (6th Cir. 2015). A defendant faces substantial prejudice if the error likely substantially affected his conviction. *White*, 492 F.3d at 404.

2.        Expert Testimony

The parties first dispute whether Christensen's testimony constituted expert testimony pursuant to Federal Rule of Evidence 702. Eby asserts that Christensen was an expert witness because his testimony required experience and specialized knowledge far beyond that of a lay person. The Government, however, maintains that his testimony most likely did not constitute expert or opinion testimony and that "the forensic software [Christensen] utilized is the expert." Appellee's Br. 25.

Under Federal Rule of Evidence 702, a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise . . . ." To testify as such, the proponent must demonstrate that:

> it is more likely than not that (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

*Id.* We have determined that a law enforcement agent provided expert testimony when he generated a report using forensic software, the interpretation of which required application of knowledge and familiarity with computers well beyond that of the average layperson. *Ganier*, 468 F.3d at 926.

In this case, Agent Christensen testified to his background, noting that he had attended numerous classes and trainings involving forensic tools and computer analysis. Christensen also testified to his undercover investigation into the Chateen website as well as his forensic analysis of Eby's laptop. To conduct this analysis, he first duplicated the hard drive on Eby's computer,

then ran the duplicated hard drive through two different forensic programs, IEF and Axiom, which processed all the information on the hard drive and searched for different artifacts of potential interest. Christensen testified that the artifacts of potential interest included computer files, browser history, bookmarks, shortcuts, and LNK files. He also found anti-forensics software, evidence of a VPN, and flash cookies from the Chateen website. Christensen also recovered photographs and videos that had been deleted but were still on the computer's unallocated space. To recover such artifacts, Christensen "carve[d] out the data and put it back together [to] reproduce the file that was there." R. 80, Trial Tr., PageID 1023. Such knowledge and familiarity with computers and the forensic software programs was well beyond the average layperson's knowledge in this arena. *See Ganier*, 468 F.3d at 926.

Accordingly, we find that Christensen, in testifying about the forensic analysis of computers, media devices, and other items of electronic evidence, was an expert witness.

### 3. Proper Rule 16 Disclosure

When the Government proffers an expert witness, it must give the defendant a written summary of any testimony that it intends to use in its case-in-chief at trial under Federal Rules of Evidence 702, 703, and 705, if the defendant so requests. *White*, 492 F.3d at 405; Fed. R. Crim. P. 16(a)(1)(G) advisory committee's note to 2022 amendment. Known as a Rule 16 notice, it requires the Government to describe "the witness's opinions, the bases and reasons for those opinions, the witness's qualifications, and a list of other cases in which the witness has testified in the past 4 years." Fed. R. Crim. P. 16(a)(1)(G). Expert disclosures are to be provided "sufficiently before trial to provide a fair opportunity for the defendant to meet the government's evidence." *Id.* To support reversal based on a deficient Rule 16 notice, Eby must show that he was surprised

at trial and that the outcome of the case would have been different had he received a more detailed notice. *White*, 492 F.3d at 407.

Eby contends that the Government's Rule 16 notice for Christensen was deficient because it contained only broad statements that provided neither a "complete statement of all opinions" nor the "basis and reasons for them." Specifically, Eby first objected at trial to the introduction of certain evidence from the Axiom portable case file, arguing that it was not turned over to him pursuant to Rule 16. At a post-trial evidentiary hearing before the district court, however, Curtin testified on direct examination that he was not given the Axiom portable case file, but then on cross-examination, he admitted that he did have access to the file and claimed that he just did not remember reviewing it.

Eby reiterates his argument that the Government violated Rule 16 by providing an insufficient notice that erroneously indicated that he had been given prior access to the relevant data. He also argues that the Government violated Rule 16 because it did not give him a portable case file with the correct tags, did not explain how Christensen identified and tagged that information, and did not tell him what those tags represented. The record reflects the following. Eby's defense expert admitted that he did have access to the Axiom portable case file and the tagged information therein when he was provided a scheduled visit to Christensen's office to view the electronic data from February 14 to February 17, 2023, eleven months before trial. Prior to Curtin's visit, Christensen prepared a drive containing several folders, including one labeled, "Portable Case File," which contained the portable case files of all the forensic reports generated from the electronic devices seized in this case. Included in this folder was the Axiom portable case file with Christensen's tagged artifacts. Christensen went over the different folders and information on the drive with Curtin, explaining that the portable case files did not contain

contraband and could be removed from the FBI field office. Curtin testified that he did not take the portable case file and does not remember reviewing it during this time, but he does not dispute that he had access to it. Although Curtin chose not to review the portable case file at that time and did not take it with him, the file remained available to him for viewing for the next eleven months leading up to trial.

Eby further contends that the purportedly deficient Rule 16 notice affected his case because he was surprised at trial. As noted above, however, Eby and his expert witness had access to the underlying information that formed the basis of Christensen's forensic analysis testimony for eleven months prior to trial. Eby does not explain how he was surprised at trial or how the outcome of his case would have been different. We have previously concluded that reversal was not warranted, even if the Government provided a deficient Rule 16 notice, because the defendant did not meaningfully explain how a more detailed notice would have changed the outcome of his case given that the "content and basis of [the expert's] testimony was the subject of a substantial amount of pretrial discourse." *United States v. Wells*, 211 F.3d 988, 997 (6th Cir. 2000).

On this record, Eby's unsupported claim of being surprised at trial is insufficient.[1] We reject Eby's claim of reversible error based on an allegedly deficient Rule 16 notice.

1. Exhibits 62 and 63

Eby argues that the district court erred when it admitted Exhibits 62 and 63 because they were expert reports that should have been disclosed to him prior to trial. He further argues that the portable case file produced to him in discovery did not contain the same tags as Exhibits 62 and 63. The Government counters that these exhibits were trial exhibits and not expert reports and, therefore, it did not need to include them in its Rule 16 notice. The Government also contends

---

[1] To the extent Eby suffered any surprise, it would be because of his expert's, not the Government's, conduct.

that the material on which the exhibits are based is the same material from the portable case files that Eby's expert had full access to before trial.

As noted above, the Government must give a defendant a written summary of any testimony that it intends to use under Rules 702, 703, and 705. *White*, 492 F.3d at 405, 407. The district court determined that Exhibits 62 and 63 contained summaries of raw information exported from Christensen's Axiom portable case file, and therefore, they were merely trial exhibits summarizing the expert testimony but not expert reports themselves. Furthermore, the district court found that the admission of these exhibits did not violate Eby's rights because Eby's expert had access to the expert reports from which the exhibits drew eleven months before trial.

Eby is correct that the Government did not timely disclose Exhibits 62 and 63. The district court ordered the disclosure of trial exhibits twelve days prior to the start of trial. The Government concedes that it may have failed to disclose these exhibits by the court-ordered deadline, and it appears that the Government did not disclose these exhibits until the first morning of trial. Eby asserts that this failure warrants reversal of his conviction. The Government's violation of the district court's order is concerning and leads us to review whether Eby was prejudiced. The district court determined that Eby failed to demonstrate that the late disclosure prejudiced him. On appeal, Eby asserts only conclusorily that the failure to disclose these exhibits by the court-ordered deadline substantially violated his rights. He does not explain how he was prejudiced given that he had access to the information forming the basis of these reports for eleven months prior to trial. In a similar scenario, we have held that a defendant was not prejudiced where the Government submitted summary exhibits two days before trial because the defense had prior access to the information in the exhibits. *United States v. Peck*, 62 F. App'x 561, 566 (6th Cir. 2003). And here, Eby had access to the Axiom portable case file—which Exhibits 62 and 63 summarize—

approximately eleven months prior to trial. Accordingly, we hold that the district court did not abuse its discretion in determining that Eby failed to establish prejudice.

We reject Eby's argument that the district court erred in admitting Christensen's expert testimony, and that the Government's Rule 16 notice and late disclosure of two trial exhibits warranted reversal.

### B.      Response to the Jury's Inquiry

Eby asserts that the district court erred in its response to a jury question because its response usurped the jurors' role as fact finders and impermissibly shifted the burden of proof to Eby.

#### 1.      Standard of Review

Where, as here, a party objects to a court's response to a jury question, we review for abuse of discretion. *United States v. Davis*, 490 F.3d 541, 548 (6th Cir. 2007); *United States v. Moran*, 771 F. App'x 594, 601 (6th Cir. 2019). A district court does not abuse its discretion when responding to a factual jury question "unless, taken as a whole, the answers rendered the jury instructions, confusing, misleading, and prejudicial." *United States v. Maike*, No. 22-6114, 2025 WL 1770555, at *2 (6th Cir. June 26, 2025) (quoting *United States v. Fisher*, 648 F.3d 442, 447 (6th Cir. 2011)).

#### 2.      Legal Analysis

In this case, the jury sent a question to the court: "Were any of the images or videos found on Eby's computer of the minor victims?" R. 81, PageID 1294. The district court initially proposed to the parties a response directing the jurors to rely on their own recollection, but defense counsel objected and requested an instruction that "told the jurors that there was no evidence that the images found on Mr. Eby's computer were of the minor victims." But the Government objected to that instruction. The district court then offered defense counsel a choice between two

instructions:  to either (1) instruct the jurors to rely on their own memory, or (2) instruct them that there was no evidence on Eby's computer that the images were or were not the minor victims. (*Id.*). Defense counsel objected to both but noted its preference for the latter instruction.  The district court ultimately instructed the jurors that "there was no evidence on Eby's computer, Exhibits 44 and 51, . . . that the images were or were not the minor victims."  R. 81, PageID 1295.

Eby now contends that the district court should have advised the jury to rely on their own recollection of the evidence presented at trial.  But defense counsel, at least twice, rejected this very instruction.  If the district court erred in not giving the jury this instruction, Eby invited such an error.  And a party generally may not appeal an error that he himself invited.  *United States v. Barrow*, 118 F.3d 482, 490 (6th Cir. 1997).  Indeed, we only review an invited error where the inviting party demonstrates that failing to do so would cause manifest injustice.  *United States v. Akridge*, 62 F.4th 258, 264 (6th Cir. 2023).  And a party fails to show manifest injustice where he does not even mention it in his briefing.  *Id.*  In this case, Eby has not shown manifest injustice as he does not explain why the failure to give this instruction created such injustice.

The district court's instruction, moreover, did not render the jury instructions confusing, misleading, or prejudicial nor did it improperly shift the burden of proof to Eby.  The district court explained that it gave the instruction to "strike[] the even-handed balance of handling this question because we don't know if [the images] were or they weren't [the minor victims]."  R. 81, PageID 1297; *see id.* at 1294 (justifying instruction because "no one can definitively tell because they're not pictures of their faces.  They're pictures of other portions of their bodies.").  Even Eby appears to agree that the evidence presented was not definitive as he states that "there was *no* testimony presented at trial that the images in question were (or were not) of the minor victims."  Appellant's Br. 23 (emphasis in original).  The district court thus reasoned that, had it given Eby's proposed

instruction, "it would likely have invaded the jury's fact-finding role by advocating for a particular interpretation of the evidence; namely, that the images were definitively not those of the minor victims." R. 100, PageID 1570. By instructing the jury that there was no evidence either way, the district court properly refrained from commenting on the absence of evidence. *See generally Moran*, 771 F. App'x at 601–02. And it was careful to not affirmatively advocate for one party over the other. *See United States v. Infante*, 404 F.3d 376, 389 (5th Cir. 2005) (affirming that district court properly responded to jury question about whether co-defendant drove the same vehicle as defendant when it advised, "[t]here is no evidence either way").

The district court did not abuse its discretion in giving the challenged instruction, and we reject Eby's assertion that the instruction was error.

### C.  Other Acts of Child Molestation Under Federal Rule of Evidence 414

Eby asserts that the district court erred when it admitted evidence of other acts of child molestation under Federal Rule of Evidence 414(a). Specifically, the district court permitted testimony that, in 2019, law enforcement recovered 243 images on Eby's computer depicting minors engaged in sexually explicit conduct. These images were found in Eby's computer's "unallocated space"—meaning that they were not saved in a file or had been deleted. The court also allowed the Government to display a representative sample of these images to the jury with a limiting instruction. Eby contends that the prejudicial nature of this evidence substantially outweighs its probative value, and its introduction damaged his ability to defend himself.

#### 1.  Standard of Review

As noted above, we review a district court's evidentiary decisions for an abuse of discretion. *Ganier*, 468 F.3d at 925. Therefore, we will reverse a district court's decision only if we have a "definite and firm conviction" that the court erred. *United States v. Fowler*, 819 F.3d

298, 304 (6th Cir. 2016) (quoting *United States v. Ware*, 282 F.3d 902, 907 (6th Cir. 2002)). A district court errs if it applies an incorrect legal standard, misapplies the correct legal standard, or relies upon a clearly erroneous finding of fact. *Id.* at 303–04.

### 2. Legal Analysis

Under Rule 414(a), where a defendant is accused of child molestation, the district court may admit evidence showing that the defendant committed any other act of child molestation, and the jury may consider it on any relevant matter. Fed. R. Evid. 414(a). Child molestation is defined broadly to include any conduct that 18 U.S.C. chapter 110 prohibits. *United States v. Libbey-Tipton*, 948 F.3d 694, 701 (6th Cir. 2020); Fed. R. Evid. 414(d)(2)(B). Although a defendant's prior bad acts are generally inadmissible to show his propensity to commit the charged offense, this Rule operates as an exception. *United States v. Seymour*, 468 F.3d 378, 384–85 (6th Cir. 2006). Still, Rule 414(a) evidence is subject to a Rule 403 analysis, which permits a court to exclude relevant evidence if its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *Libbey-Tipton*, 948 F.3d at 704–05.

Here, the relevant Rule 414 evidence is child pornographic images found on Eby's computer's "unallocated" space in 2019. The parties dispute only whether the probative value of the Rule 414 evidence is substantially outweighed by unfair prejudice. In reviewing a Rule 403 analysis, we grant the district court very broad discretion. *Libbey-Tipton*, 948 F.3d at 705. When considering the probative value of such evidence, courts look to the closeness in time between the acts, the similarity between the instant act and the prior act, and whether a less invasive means of obtaining the information existed. *Id.* at 701–02. The court should analyze the evidence's probative value separately from the Government's need for the evidence. *Id.*

In this case, after hearing argument from the parties, the district court properly determined that the Rule 414 conduct was very similar to the conduct charged in the indictment as both involved self-produced child pornography. Although acknowledging that there were some differences, including that certain of the Rule 414 videos contained multiple individuals instead of just one, the district court properly noted that the law does not require the incidents to be identical. Based on this similarity, the court found that the Rule 414 evidence's probative value was not outweighed by any unfair prejudice. We have held that where the charged conduct and the prior Rule 414 conduct are "sufficiently similar," the Rule 414 evidence's prejudicial effect is outweighed by its probative value. *United States v. Hruby*, 19 F.4th 963, 969 (6th Cir. 2021).

Exercising its broad discretion, the court determined that the location of the images in the "unallocated" space on Eby's computer, as well as whether Eby "ever watched or knew about the images on his device," went to the weight of the evidence and not its admissibility. At trial, the district court instructed the jury that it may not convict Eby "simply because he may have committed other unlawful acts." R. 80, Trial Tr., PageID 1020–21. Such a limiting instruction can mitigate a danger of unfair prejudice. *United States v. Kniffley*, 729 F. App'x 406, 415 (6th Cir. 2018) (discussing a similar limiting instruction). Thus, the district court did not err in rejecting Eby's argument that he did not possess the Rule 414 images because they were in "unallocated space" on his computer, which he argued showed that the images were deleted and that he could no longer access them.

Finally, although Eby argues that the Rule 414 conduct was too remote in time to be probative, Rule 414 deliberately has no time limit. *United States v. Jones*, 747 F. App'x 348, 357 (6th Cir. 2018); *see also United States v. Underwood*, 859 F.3d 386, 393 (6th Cir. 2017) (detailing the legislative history of Rule 414 including that "[n]o time limit is imposed on the uncharged

offense for which evidence may be admitted.") (citation modified). We have upheld the introduction of Rule 414 evidence that was more than twenty years old. *Id.* So, the district court did not abuse its discretion in determining that the three-year period here between the charged conduct and the Rule 414 conduct was not so prejudicial as to substantially outweigh its probative value.

We reject Eby's challenge to the admission of Rule 414 evidence and affirm the district court's decision.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Eby's conviction.