NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0842n.06

No. 11-3392

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Aug 06, 2012**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| ALLEN L. KEEFER, | ) | |
| | ) | **O P I N I O N** |
| **Defendant-Appellant.** | ) | |
| _____ | ) | |

Before: MOORE, SUTTON, and STRANCH, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Defendant-Appellant Allen Keefer ("Keefer") appeals for the second time his sentence of 210 months of imprisonment for distributing and possessing child pornography. For the following reasons, we **AFFIRM** the district court's judgment.

**I. BACKGROUND**

On January 30, 2009, Keefer pleaded guilty to one count of distributing material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2), one count of distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A), and one count of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). He was sentenced to a total of 210 months of imprisonment, based in part on a five-level enhancement under the U.S. Sentencing Guidelines ("U.S.S.G.") applied for offenses involving 600 or more images after the police discovered 1,215

images in the "unallocated space" on his computer. U.S.S.G. § 2G2.2(b)(7)(D) (2010). Keefer

appealed the procedural reasonableness of applying this enhancement based on the presence of

images in the unallocated space on his computer, arguing that he had only 39 images on his hard

drive and no knowledge of the images in the unallocated space. We agreed that the evidence at

sentencing did not show knowledge of all the images and remanded for resentencing. *United States*

*v. Keefer*, 405 F. App'x 955, 959 (6th Cir. 2010) ("*Keefer I*") (unpublished opinion).

On remand, the government presented testimony from Special Agent Michael Dobeck from

the United States Secret Service, a forensic computer examiner with twenty years of experience who

had examined Keefer's hard drive in this case. Agent Dobeck testified that his examination of

Keefer's computer revealed that 1,062 of the 1,215 images in Keefer's unallocated space had been

viewed in their full size at some point on Keefer's computer and were therefore, in his opinion,

previously viewed or downloaded as a full-sized image. R. 29 (Resent. Hr'g Tr. at 22). The district

court again applied the enhancement, finding "that the 1062 images found in the unallocated space

on the defendant's computer were at some time opened and viewed in full size by the defendant, and

that they were either saved and deleted by the defendant, or held in a temporary internet file without

being saved." R. 25 (D. Ct. Order at 1). Keefer was resentenced to 210 months of imprisonment.

Keefer appeals on the same grounds as before, arguing that the enhancement was wrongly applied

and that his sentence is therefore procedurally unreasonable.

## II. STANDARD OF REVIEW

We review claims that a sentence was procedurally unreasonable for abuse of discretion. *United States v. Lapsins*, 570 F.3d 758, 772 (6th Cir. 2009) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). We review de novo a district court's application of the sentencing guidelines and its findings of fact for clear error. *United States v. Hunt*, 487 F.3d 347, 350 (6th Cir. 2007).

## III. APPLICATION OF SECTION 2G2.2 ENHANCEMENT

Section 2G2.2 instructs a district court to increase the base offense level by five levels "[i]f the offense involved 600 or more images." U.S.S.G. § 2G2.2(b)(7)(D) (2010). Whether an offense "involves" the requisite number of images is determined by looking to the defendant's relevant conduct under U.S.S.G. § 1B1.3 (2010). *Keefer I*, 405 F. App'x at 958; *see also United States v. Lewis*, 605 F.3d 395, 403 (6th Cir. 2010) (considering defendant's conduct during commission of offense when determining whether § 2G2.2 enhancement should apply). We held in *Keefer I* that the mere presence of 1,215 images in Keefer's "unallocated space" on his computer was insufficient relevant conduct to justify the enhancement because the PSR's sole explanation of the unallocated space was an "unverified, unexplained website definition" that "images are stored in unallocated space if they were *present* on a computer at some point." *Keefer I*, 405 F. App'x at 958. Presence does not equate to knowing possession or access given the myriad ways a person can inadvertently encounter content on the internet. *Id.*

Before discussing the evidence on remand, we must acknowledge a potential point of confusion following our prior opinion. In *Keefer I*, we held that the number-of-images enhancement

would apply if the government could "show[] by a preponderance of evidence that at some point Keefer knowingly possessed or knowingly accessed with intent to view each of the 600 or more images." *Id.* On remand, the district court held that the enhancement applied because the government had proven that Keefer "possessed *or* accessed with intent to view" the images in his unallocated space. R. 25 (D. Ct. Order at 1) (emphasis added). At the time of his offense in January 2008, however, federal law prohibited only the knowing possession of child pornography, not accessing such images with the intent to view.[1] Despite this potential confusion, any error would be harmless because Ohio law prohibited both knowingly possessing and viewing child pornography in January 2008. Ohio Rev. Code § 2907.323(A)(3) ("No person shall . . . [p]ossess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity, unless [certain exceptions apply].").[2]

---

[1]Both 18 U.S.C. §§ 2252(a)(4) and 2252A(a)(5) were amended in 2008 to criminalize the knowing access of child pornography with the intent to view it in addition to knowing possession. Effective Child Pornography Prosecution Act of 2007, Pub. L. No. 110-358, § 203, 122 Stat. 4001 (2008). The amendments did not become effective until October 8, 2008, when they were signed into law by the President. *See Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991) (holding law effective on date of enactment unless clear direction to the contrary).

[2]Although the government did not cite § 2907.323(A)(3) on remand, we take judicial notice of the law due to our own instructions to the parties to include proof of viewing the images and not merely possession on remand. *See United States v. Maken*, 510 F.3d 654, 660 (6th Cir. 2007) (taking judicial notice of state law). The parties were also both asked to submit letter briefs to us addressing whether accessing images that meet the definition of child pornography under federal law would also constitute a violation of Ohio Revised Code § 2907.323(A)(3). The government responded in the affirmative. Keefer responded only to say that such conduct would not constitute possession under Ohio or federal law, but Keefer made no argument with respect to the prohibition on viewing.

Keefer's sentence could not be enhanced based on conduct that does not "amount[] to an offense for which a criminal defendant could potentially be incarcerated." *United States v. Shafer*, 199 F.3d 826, 831 (6th Cir. 1999). But we make no distinction between potential incarceration under federal law or under state law when considering whether behavior can amount to relevant conduct. *United States v. Maken*, 510 F.3d 654, 657-58 (6th Cir. 2007). Although the Ohio law differs from the federal law in two ways, the differences are immaterial in this case.

First, Ohio bans viewing instead of accessing with the intent to view. Although Ohio has not clearly defined the scope of the word "view" in the law, at a minimum, we know the law punishes defendants who "voluntarily reach[] out and br[ing] to [their] computer screen the images in question." *State v. Hurst*, 909 N.E.2d 653, 665 (Ohio Ct. App. 2009). This would reasonably include accessing qualifying images with the intent to view them. The Ohio definition of child pornography in § 2907.323(A)(3) is also potentially broader than federal law, but has been read by both the United States Supreme Court and Ohio Supreme Court to prohibit only the "possession or viewing of material or performance of a minor who is in a state of nudity, where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals." *Osborne v. Ohio*, 495 U.S. 103, 113 (1990) (quoting *State v. Young*, 525 N.E.2d 1363, 1368 (Ohio 1988)); *see also United States v. McGrattan*, 504 F.3d 608, 612-13 (6th Cir. 2007). This definition at a minimum would include the images at issue in this case, which involved "naked children" either engaged in sexually explicit conduct or the lascivious exhibition of their genitals. R. 29 (Resent. Hr'g Tr. at 11).

Therefore, although our remand may have used language resembling the federal statute, any error in applying the enhancement based on the viewing of the images identified on Keefer's computer was harmless in light of Ohio law. The only issue is whether the testimony sufficiently established that Keefer did in fact view the images found in his unallocated space.

On remand, the government presented the testimony of Agent Dobeck on the images found in Keefer's unallocated space. Agent Dobeck's testimony addressed our prior concerns about the general lack of an explanation regarding how images appear in a computer's unallocated space. Dobeck testified that the unallocated file space was a partitioned part of a hard drive that serves as a temporary storage area when files are opened or deleted. R. 29 (Resent. Hr'g Tr. at 12-13). When a computer user deletes a file from his hard drive, Dobeck explained, "[the file] is not wiped from the hard drive itself; it is just placed in unallocated file space." *Id.* at 13. Normal users could no longer access the file, but the file is still recoverable via forensic examination. *Id.* Dobeck also clarified that attachments to unsolicited email spam would not be downloaded automatically to a user's computer when using a web-based email system like Yahoo!, as Keefer was. *Id.* at 18. The user would have to open not just the email but also click to download the attachment for the attachment to wind up on the user's computer. *Id.* at 19-20.

Dobeck explained that images can also end up in the unallocated space from visiting a website. When a user visits a website, Dobeck explained, the user's computer will store information from that website as a temporary internet file so that the page will load faster the next time the user returns. *Id.* at 14-15. These temporary files reflect what was viewed on the screen. *Id.* at 15. For

6

example, if a person visits a page containing numerous thumbnail[3] images, those images will appear as temporary files the size of the thumbnails, not full-sized images. *Id.* If, however, a person clicked on the thumbnail to view the full-sized image, the temporary file would appear as a full-sized image. *Id.* Pop-up advertisements would also create temporary internet files, but these too would reflect only the image of the advertisement shown on the screen and not any other content from the advertised site unless the user took further action to follow the advertisement. *Id.* at 17. These temporary internet files end up in the unallocated space in one of two ways. When those temporary files are deleted, the images would be placed in the unallocated space just like any other deleted file. *Id.* at 15. Temporary internet files can also end up in the unallocated space without ever being deleted if the computer's allocated space for temporary files reaches its capacity, at which point the computer starts sending the excess temporary files directly into the unallocated space. *Id.* at 15-16.

Agent Dobeck believed that at least 1,062 of the 1,215 images in Keefer's unallocated space were downloaded or viewed as full-sized images because they were greater than 13 kilobytes in size. *Id.* at 21. Dobeck conceded that he could not discern other details about the files, such as who accessed the image, when it was accessed, or how the file was accessed by the user. *Id.* at 24-25. But, Dobeck testified that at a minimum, for the images to be this size, the computer's user had to

---

[3]"[T]humbnails are simply previews of digital images that are viewable without opening the digital folder in which the digital images are contained." *United States v. McNerney*, 636 F.3d 772, 774 n.1 (6th Cir. 2011). According to Dobeck, thumbnails are typically four kilobytes in size on the type of operating system used by Keefer and no more than twelve kilobytes. R. 29 (Resent. Hr'g Tr. at 20-21). In contrast, the full-size images were roughly twenty to eighty-six kilobytes. *Id.* at 22 ("They ranged from a low of 20,000 bytes to a high of 86,000 bytes.").

either open an email attachment, download the file, or view the full-size image on the internet. *Id.* at 24-25, 29. Receiving a spam email without opening the attachment or viewing a pop-up advertisement or thumbnail without more would not be enough. *Id.* at 15, 17, 19-20.

Of course, a defendant could counter the aforementioned circumstantial evidence by explaining that he had opened full-sized email attachments with benign names only to discover and immediately delete child pornography. Or he could explain that he downloaded a folder of photographs believing them to be adult pornography, only to discover upon opening the files and immediately deleting them that they contained something else. Both of these scenarios would explain the presence of full-sized images in a defendant's unallocated space but would be insufficient to justify the enhancement. That situation, however, is not before us today. Here, not only were such innocent explanations never offered, but the government also established that at least seven of the child-pornography files in the unallocated space were sent by Keefer to someone in Florida. Unlike our concern in *Keefer I* with this evidence, we now know through Dobeck's testimony that these seven images were the same size as 1,062 other image files in the unallocated space, suggesting similar access. Keefer also testified at resentencing[4] that upon downloading a file, he would decide if he liked it, and if he did not, he would delete it, not that he deleted images upon discovering their true contents. R. 29 (Resent. Hr'g Tr. at 51). This also suggests that Keefer at a minimum viewed the files that were ultimately found on his computer. Finally, Keefer's ex-wife

---

[4]We are careful not to place too much emphasis on Keefer's statements at the resentencing hearing given that he was heavily medicated at the time for seizures and had been experiencing memory loss and confusion. R. 29 (Resent. Hr'g Tr. at 47-49, 51).

testified that the computer on which the images were found was located in the basement in a room used only by Keefer. *Id.* at 38, 40.

In all of the possible scenarios identified by Dobeck for how these files appeared in Keefer's unallocated space, the circumstantial evidence establishes that Keefer at a minimum knowingly viewed the images found in his unallocated space. Keefer relies solely on *United States v. Kuchinski*, 469 F.3d 853 (9th Cir. 2006), but *Kuchinski* relates only to knowing possession. The defendant in *Kuchinski* successfully argued that the presence of thousands of full-sized images first viewed online and then stored as temporary internet files on his computer without the defendant's knowledge should not be used to enhance his sentence. *Kuchinski*, however, does not address whether knowingly viewing child pornography was criminal under state law at the time of Keefer's offense. The temporary files may not have established knowing possession if Keefer was ignorant of their existence, but at the time of his offense, Keefer's act of viewing the images was criminal under state law. It could therefore be considered relevant conduct in enhancing his sentence.

In light of this unrebutted testimony, the district court did not err in concluding that Keefer's relevant conduct included the viewing of 1,062 images of child pornography. The application of the enhancement in U.S.S.G. § 2G2.2(b)(7)(D) was therefore not procedurally unreasonable.

## IV. CONCLUSION

For the aforementioned reasons, we **AFFIRM** the sentence of the district court.