NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0584n.06

No. 19-4148

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td></td></tr>
<tr><td>Plaintiff-Appellee,</td><td>)<br>)<br>)</td><td>FILED<br>Oct 16, 2020<br>DEBORAH S. HUNT, Clerk</td></tr>
<tr><td>v.</td><td>)<br>)</td><td>ON APPEAL FROM THE UNITED<br>STATES DISTRICT COURT FOR</td></tr>
<tr><td>ALLEN KEEFER,</td><td>)<br>)</td><td>THE NORTHERN DISTRICT OF<br>OHIO</td></tr>
<tr><td>Defendant-Appellant.</td><td>)<br>)</td><td></td></tr>
</table>

BEFORE: BATCHELDER, GRIFFIN, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. Allen Keefer, a federal prisoner with several more years to serve on his child-pornography convictions, has long suffered from debilitating seizures. The district court relied on Keefer's poor health as a reason for imposing a sentence at the bottom of his guidelines range. But Keefer asserts that his health has continued to deteriorate while he has been incarcerated. He thus asked the district court to grant him immediate "compassionate release" under 18 U.S.C. § 3582(c)(1)(A)(i). Keefer claimed that his deteriorating health qualified as an "extraordinary and compelling reason" for this type of relief. *See id.* The district court rejected Keefer's request because it had already taken Keefer's health into account when choosing his original sentence. The court adequately explained its reasoning for denying Keefer's motion, and its reasoning has sufficient support in the record. We affirm.

I

A

In 2007, Keefer sent an electronic message to an internet chatroom stating that he "want[ed to] chat with REAL FEMALE about enjoying young girls together." *United States v. Keefer*, 405 F. App'x 955, 956 (6th Cir. 2010) (citation omitted). Keefer struck up a conversation with what he thought was the mother of a 10-year-old girl living in Miami, Florida. *Id.* Over the course of their communications, Keefer sent this person several images of "adult males engaged in inter-course with prepubescent females and prepubescent females exposing their genitals." *Id.* It turns out, however, that this individual was an undercover police officer with the Miami Beach Police Department. *Id.* Keefer was indicted on, and ultimately pleaded guilty to, three child-pornography counts. *See id.* at 955; 18 U.S.C. §§ 2252(a)(2), 2252A(a)(2)(A), 2252A(a)(5)(B).

At Keefer's 2009 sentencing hearing, the district court calculated his guidelines range as between 210 and 262 months in prison. Keefer's counsel advocated for a shorter sentence because Keefer had suffered from "grand mal seizures" ever since a 1986 car accident. When balancing the sentencing factors in 18 U.S.C. § 3553(a), the court chose a 210-month sentence. It picked a sentence at the very bottom of Keefer's guidelines range partially "based upon some of [Keefer's] health concerns[.]"

On appeal, we vacated Keefer's sentence and remanded for resentencing. *Keefer*, 405 F. App'x at 959. We found that the district court lacked sufficient evidence to impose a five-level enhancement that was tied to the number of images that Keefer had possessed. *Id.* at 958.

At a resentencing hearing two years after the original one, the district court took additional evidence. In light of this new evidence, it found that the five-level enhancement still applied.

Keefer's guidelines range thus remained the same. The court opted to reinstate the original 210-month sentence.

During this resentencing, Keefer's health issues were revisited. When asked if he was on medication, Keefer noted that he took drugs for his seizures and that the drugs kept him "out of it 24-7." He apologized to the court if he "seem[ed] a little slow or out of it in [his] answers[.]" He also told the court that the seizures had already caused him to lose "a lot of [his] memory" and that he could not remember some of his encounters with law enforcement and some of his downloads of child pornography.

On a second appeal, we affirmed Keefer's sentence. *United States v. Keefer*, 490 F. App'x 797, 801–02 (6th Cir. 2012). When doing so, we noted that Keefer had been "heavily medicated" and "experiencing memory loss and confusion" during his resentencing. *Id.* at 801 n.4.

B

Keefer is presently scheduled for release in May 2024. In 2019, he filed a motion seeking "compassionate release." *See* 18 U.S.C. § 3582(c)(1)(A). He asserted that his deteriorating health provided the "extraordinary and compelling" circumstances necessary for this relief. His medical records showed that he continues to have seizures and has several other maladies. Affidavits from two fellow prisoners asserted that Keefer has lost more of his memory and has suffered from strokes exacerbating his cognitive decline. Keefer's conditions have allegedly made it difficult for him to care for himself. According to his fellow prisoners, he remains bedridden except when he uses a wheelchair to get food or medications and frequently urinates and defecates on himself. These prisoners further noted that he often does not know where he is or who others are, which has allowed inmates to take advantage of his disoriented state by swindling him out of money.

The district court denied relief. (The same judge who sentenced Keefer also considered this motion.) The court recognized that Keefer had to show "extraordinary and compelling reasons" for release. 18 U.S.C. § 3582(c)(1)(A)(i). It recognized, too, that the Sentencing Commission had identified as an extraordinary reason for release a health condition that diminishes a defendant's ability to provide "self-care" in prison as long as the defendant is not "expected to recover" from that condition. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). Yet the court found that Keefer had failed to show that "he has no chance of improving his physical and mental health conditions" because his medical records indicated that he had not been taking the medications that control his seizures. It added that Keefer "is housed in a medical facility and has access to treatment for all of his health issues." It lastly reasoned that the health factors that Keefer's motion highlighted "were known to or able to be anticipated" by the court and that it had considered these factors "at the time of his sentencing." Keefer now appeals.

## II

### A

A district court generally "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). This prohibition, however, comes with a few exceptions. *Id.* § 3582(c)(1)–(2). Among them, a district court may grant what has come to be known as "compassionate release" (a phrase that the statute itself does not use). *See United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Under 18 U.S.C. § 3582(c)(1)(A)(i), a court may "reduce [a] term of imprisonment" that has been imposed if it finds two requirements met. *Id.* § 3582(c)(1)(A). The court initially must "find[]" that "extraordinary and compelling reasons warrant such a reduction[.]" *Id.* § 3582(c)(1)(A)(i). It next must "find[]" "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" *Id.* § 3582(c)(1)(A). Even

4

if it makes these two findings, moreover, the court still may not grant a reduced sentence without "considering the factors set forth in section 3553(a) to the extent that they are applicable[.]" *Id.* So these well-known sentencing factors—which include such things as the characteristics of the defendant or the nature of the offense—remain relevant at this sentence-modification stage. *Cf. Chavez-Meza v. United States*, 138 S. Ct. 1959, 1965 (2018).

The Sentencing Commission issued a policy statement about these sentence reductions in U.S.S.G. § 1B1.13. In addition to reiterating the statutory requirements, § 1B1.13 adds a guidelines requirement: A district court must find that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" *Id.* § 1B1.13(2). In Application Note 1 to § 1B1.13, the Commission also listed the "extraordinary and compelling reasons" that might entitle a defendant to a sentence reduction. *Id.* § 1B1.13 cmt. n.1(A)–(D). As relevant here, this note states that "extraordinary and compelling reasons exist" if "[t]he defendant is" "suffering from a serious physical or medical condition" "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* § 1B1.13 cmt. n.1(A)(ii)(I).

The statute's plain text makes evident the discretionary nature of a compassionate-release decision. It says that a district court "*may* reduce the term of imprisonment" if "*it* finds" that the two statutory requirements exist. 18 U.S.C. § 3582(c)(1)(A) (emphases added). "The word 'may' clearly connotes discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994). So the statute lists factors that, when present, *permit* a district court to reduce a sentence. It does not list factors that *require* the court to do so. *Cf. United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010). Even when the court finds those requirements met, for example, the court may still deny relief based on

"the factors set forth in section 3553(a)" if the court concludes that those factors are "applicable." 18 U.S.C. § 3582(c)(1)(A). In short, every part of this text signals discretion.

Circuit precedent confirms this reading. For one thing, the circuit courts that have considered this question have all "review[ed] a district court's decision denying compassionate release for an abuse of discretion." *United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (order); *see United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020); *United States v. Rodd*, 966 F.3d 740, 747–48 (8th Cir. 2020); *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020); *see also United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam). That deferential standard of review comports with how our court has treated similar motions for a reduced sentence under nearby provisions, such as a motion for a sentence reduction based on a subsequent guidelines change. *See Curry*, 606 F.3d at 327 (discussing 18 U.S.C. § 3582(c)(2)). (The government makes no argument that appellate review should be even more restricted under 18 U.S.C. § 3742(a), so we need not consider the point. *Cf. United States v. Foreman*, 958 F.3d 506, 512–15 (6th Cir. 2020); *United States v. Marshall*, 954 F.3d 823, 829–31 (6th Cir. 2020).)

For another thing, circuit courts have recognized that a district court has discretion to deny a sentence reduction even when it finds the two statutory requirements met. On more than one occasion, we have held that the district court reasonably denied relief under its balancing of the § 3553(a) factors even assuming that the defendant's poor health qualified as an "extraordinary" reason for a reduction. *See Kincaid*, 802 F. App'x at 188–89; *see also, e.g.*, *United States v. McGuire*, __ F. App'x __, 2020 WL 5629884, at *1–2 (6th Cir. Sept. 21, 2020); *United States v. Austin*, __ F. App'x __, 2020 WL 5201632, at *2–3 (6th Cir. Sept. 1, 2020) (order). Other courts have reached similar conclusions. *See Pawlowski*, 967 F.3d at 330–31; *Rodd*, 966 F.3d at 747–48. In a reduction-of-sentence proceeding, as at sentencing, the district court "is best situated to

balance the § 3553(a) factors." *Kincaid*, 802 F. App'x at 189 (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).

Yet "discretion" does not mean "whim." *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 139 (2005). A "motion to [a court's] discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Id.* (quoting *United States v. Burr*, 25 F. Cas. 30, 35 (C.C. Va. 1807) (Marshall, C.J.)). In this reduction-of-sentence context, an abuse of discretion can occur if the district court "relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law." *United States v. Flowers*, 963 F.3d 492, 497 (6th Cir. 2020) (citation omitted); *United States v. Smith*, 959 F.3d 701, 702 (6th Cir. 2020) (order). A court might abuse its discretion, for example, if it misreads the meaning of the extraordinary-reason requirement. *See, e.g.*, *Taylor*, 820 F. App'x at 230. Or it might abuse its discretion if it interprets the law to bar it from granting a reduction when, in fact, it has discretion to do so. *See, e.g.*, *United States v. Beamus*, 943 F.3d 789, 791–92 (6th Cir. 2019) (per curiam).

At the same time, busy district courts do not abuse their discretion in this context merely because they do not issue exhaustive opinions. *See Chavez-Meza*, 138 S. Ct. at 1967–68. After all, even in the original sentencing context a district court must only leave enough of a record "to allow for meaningful appellate review." *Id.* at 1965 (quoting *Gall*, 552 U.S. at 50). A sentencing court need not issue a reasoned opinion; it need only "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). And sometimes a court's indication that it has relied on the record will itself suffice to meet this requirement. *See Chavez-Meza*, 138 S. Ct. at 1967–68.

If that is true in the sentencing context, it is even more true in the reduction-of-sentence context, especially when the district judge who sentenced the defendant is the same judge who considers the defendant's reduction-of-sentence motion. *See id.* In that common scenario, a district court will *already* have considered and balanced the § 3553(a) factors the first time around at the original sentencing. *See id.* at 1966–67; *see also Curry*, 606 F.3d at 331. We have thus held that a district court did not abuse its discretion by denying a reduction-of-sentence motion in a one-sentence order noting only that it had considered the § 3553(a) factors and the record. *See McGuire*, 2020 WL 5629884, at *1–2. Although the court "did not specifically cite which factors guided its decision," we held that the court did not need to do so expressly. *Id.* at *2. "Because it [was] clear that the judge relied on the record when declining to modify [the defendant's] sentence, even a 'barebones form order' could have sufficed." *Id.* (quoting *Chavez-Meza*, 138 S. Ct. at 1968); *see also, e.g.*, *United States v. Brim*, 661 F. App'x 879, 882–83 (6th Cir. 2016); *United States v. Holland*, 391 F. App'x 468, 470–71 (6th Cir. 2010); *United States v. Dewitt*, 385 F. App'x 479, 483 (6th Cir. 2010).

B

As in these other cases, the district judge's analysis in this case was "cursory at best." *Curry*, 606 F.3d at 331. The court did not expressly mention the § 3553(a) factors and its reasons for denying relief leave ambiguous the specific legal argument on which it relied. Was it because no extraordinary and compelling reason existed? Or was it because Keefer was not entitled to relief as a discretionary matter? Still, "the record as a whole satisfies us that the judge 'considered the parties' arguments and ha[d] a reasoned basis for exercising his own legal decisionmaking authority.'" *Chavez-Meza*, 138 S. Ct. at 1967 (quoting *Rita*, 551 U.S. at 356).

To qualify for relief, Keefer needed to show, at the outset, "extraordinary and compelling reasons" for his requested sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Keefer sought to satisfy this element by proving that his seizures "substantially diminishe[d]" his ability to care for himself in prison and that he was "not expected to recover" from them. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The district court appears to have thought that Keefer had fallen short because the medical records suggested he was not taking the drugs that help control his seizures and because he was housed in a medical unit and receiving treatment. We need not (and do not) resolve whether the district court properly evaluated this statutory requirement here.

That is because Keefer needed to show more—namely, that the § 3553(a) factors warranted a sentence reduction. *See Kincaid*, 802 F. App'x at 188–89. We interpret the district court's denial as resting on this discretionary element too. It said: "[A]ll of the factors that Mr. Keefer cites in support of his motion were known to or able to be anticipated by the Court and were, in fact, taken into consideration at the time of his sentencing." This rationale—that the court had considered Keefer's health when imposing the initial sentence—strikes us as relevant to the question whether the § 3553(a) factors justified a sentence reduction as a discretionary matter. And the court had a firm basis in the record to conclude that Keefer's health condition should not trigger a different sentence than the one that it originally imposed.

The same judge presided over Keefer's two sentencing hearings and this reduction-of-sentence motion. Keefer's health concerns arose throughout. At the original sentencing, Keefer's counsel advocated for just a 60-month sentence (one well below the applicable guidelines range of 210 to 262 months). Why? In large part because of Keefer's poor health. In a presentencing memorandum, counsel noted that Keefer's seizures had forced him to take a disability retirement from his job. Counsel also explained that the seizures would get worse during Keefer's

9

incarceration, calling them "progressively debilitating." He added that Keefer's "neurologist anticipate[d] a full and total loss of memory and cognitive functioning unless a cure for these seizures can be found." Keefer's presentence report reiterated that Keefer had said that he had "lost much of his long term memory because his brain has been damaged" and that he has "problems with his short term memory." At sentencing, his counsel reemphasized that Keefer's "mind will eventually go completely and occasionally his heart has stopped during seizures."

The district court took these health concerns into account when balancing the § 3553(a) factors and choosing the sentence. It explained to Keefer that in choosing a sentence it needed to consider "your background, your health issues, your work history, your family and all those things" and "compare that with the nature of the" offenses. When undertaking this balancing, the court emphasized the serious nature of the child-pornography offenses and explained how they harm the young victims for the rest of their lives. And while Keefer's counsel had done a "terrific job" presenting substantial mitigating information, the court did not believe that this information sufficed to avoid a sentence within the guidelines range. Based in part "upon some of [Keefer's] health concerns," though, the court opted for a sentence at the bottom of that range.

At a resentencing hearing two years later, Keefer's health problems were again obvious. He told the court that he was "out of it" because of his seizure medication and that he had lost a substantial portion of his memory regarding the events in question. The court still saw "no reason not to impose the same sentence that I originally imposed, which is the minimum I can do within the Guidelines[.]"

When the court's current rationale for denying Keefer's reduction-of-sentence motion is read against this record, it becomes obvious that the court did not believe that Keefer's health concerns warranted a shorter sentence under the § 3553(a) factors. *See Chavez-Meza*, 138 S. Ct.

at 1966–67. At sentencing, the court had already been told of Keefer's poor health. And it had already been told that his condition would worsen and that he would eventually lose his memory altogether. Yet, given the serious nature of the offenses, the court found that these major health problems warranted nothing more than a reduction to the bottom of the guidelines range. Unsurprisingly, when Keefer later told the court that his health had, in fact, deteriorated, the court did not believe that this factor would warrant a change from the sentence already imposed. In short, we are satisfied that the district court considered the parties' arguments and had a reasoned basis for its decision: It had already taken Keefer's poor health into account when imposing the original sentence. *See id.* We thus see no abuse of discretion.

C

Keefer makes three arguments in response. None of them convinces us that the district court abused its discretion. *First*, Keefer argues that the district court committed legal error when considering whether an extraordinary and compelling reason existed for a sentence reduction. That is so, Keefer claims, because the court relied on facts (such as the fact that he was receiving treatment) that are irrelevant to the dispositive legal question whether his health condition diminished his ability to care for himself in prison or whether he was likely to recover from the condition. *See* U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). Yet, as noted, we need not resolve this point. Even if Keefer's health condition is "extraordinary and compelling," the district court retained discretion to conclude that his individual circumstances did not warrant a sentence reduction. *See McGuire*, 2020 WL 5629884, at *1–2.

Keefer also argues that the district court committed legal error by relying on its prior knowledge of his health conditions from the original sentencing. An application note to the Sentencing Commission's policy statement says that "an extraordinary and compelling reason need

11

not have been unforeseen at the time of sentencing" and that a sentencing court's earlier knowledge or anticipation of the asserted reason "does not preclude consideration for a reduction under this policy statement." U.S.S.G. § 1B1.13, cmt. n.2. Nothing the district court said conflicts with this application note. The note indicates only that a court may in its discretion grant a sentence reduction even if it knew at the time of the original sentencing of the factor on which it relies to do so. The note does not say that a court must *ignore* the fact that it knew of this reason or that it has already relied on it when choosing the original sentence.

*Second*, Keefer argues that the district court's fact findings were clearly erroneous. The court initially found that Keefer is not taking his medication. While true, Keefer argues that the district court overlooked that he does not take his medication because of his disoriented state and because of medical staff's failure to assist him. Here again, however, these questions concern whether Keefer has shown an extraordinary and compelling reason for a sentence reduction. We need not consider the argument because Keefer's motion fails on other discretionary grounds. *See McGuire*, 2020 WL 5629884, at *1–2.

Keefer alternatively argues that the district court committed clear error when finding that it had already considered "all of the factors" on which Keefer now relies. Keefer says the court could not have considered at sentencing some of the things that his motion asserted, including that he has had strokes and that the prison has provided inadequate care. But we do not read the district court's opinion as finding historical "facts" on this point. We read the opinion as simply stating that it had already considered Keefer's deteriorating health when deciding on his original sentence and that nothing in Keefer's motion justified a shorter one. That discretionary judgment was not an abuse of discretion. Keefer's own counsel, for example, indicated at the original sentencing that Keefer's "mind will eventually go completely[.]"

*Third*, Keefer argues that the district court wrongly resolved his motion without holding a hearing. Yet Keefer's motion did not request a hearing and nothing in § 3582(c)'s text compels a court to hold one. *See Dewitt*, 385 F. App'x at 481. Federal Rule of Criminal Procedure 43(b)(4) also makes clear that a defendant need not be present for a reduction of a sentence under § 3582. And we have held that district courts need not hold plenary hearings to resolve sentence-modification motions under § 3582(c)(2), *Dewitt*, 385 F. App'x at 481, or under § 3582(c)(1)(B), *United States v. Smithers*, 960 F.3d 339, 346 (6th Cir. 2020). Seeing no textual difference between those other parts of § 3582(c) and the subparagraph at issue here, we will not read a hearing requirement into § 3582(c)(1)(A) either.

Even if a defendant does not have an automatic right to a hearing for motions seeking sentence reductions, Keefer responds, he had a right to a hearing before the court resolved disputed factual questions against him. He cites a Seventh Circuit case holding that "a defendant is entitled to an opportunity to dispute contestable factual propositions that affect the sentence." *United States v. Neal*, 611 F.3d 399, 402 (7th Cir. 2010) (citing U.S.S.G. § 6A1.3). We need not consider this point. The district court did not resolve disputed *factual* issues. Even accepting all of the facts asserted in Keefer's motion, the district court still did not abuse its discretion in concluding that it had adequately accounted for Keefer's poor health when it imposed his original sentence.

Finding no abuse of discretion, we affirm.

13